MURRAY MESTER, Appellant, *v.* ABRAHAM MORGENSTERN et al., Respondents, et al., Defendants.

First Department, May 10, 1955.

*Stephen S. Bernstein* of counsel (*Alvin J. Burnett* and *Leo M. Drachsler* with him on the brief; *Hoffman, Buchwald, Nadel & Hoffman,* attorneys), for appellant.

*Ferdinand Pecora* of counsel (*David H. Horowitz* with him on the brief; *Schwartz & Frohlich,* attorneys), for respondents.

CALLAHAN, J. Plaintiff appeals from an interlocutory judgment awarding him an accounting upon the ground that the trial court failed to appraise properly the terms of a joint venture between the parties and to fix the extent to which plaintiff was to share in the profits. We are in accord with the view of appellant that the court erred in not finding the exact terms of the joint venture and in referring to the Referee upon the accounting the basic question of the formula upon which the parties agreed for fixing their interest in the venture.

In the latter part of 1948, defendants Morgenstern and Gogel, through a controlled corporation, contracted to buy certain acreage in Massapequa, Long Island, known as the Caroon Estate, for $175,000. They had already discussed with plaintiff the development of this land by the erection of homes, and plaintiff had agreed to finance the venture and take part in developing the property, if he was given 50% of the profits, the balance to be divided 25% to Morgenstern and 25% to Gogel. At the time plaintiff's accrued income from other sources was so high that he did not care to enter the deal, unless his profits would be deemed " capital gains " under the Federal tax laws. The parties consulted an accountant, who conceived the idea that the property should be acquired by a partnership consisting of plaintiff and the respective wives of both individual defendants (acting for their husbands), that the two individual defendants would form corporations to take conveyances of the land from the partnership, and develop the same by laying out streets, installing sewers, etc., and erect homes for sale. All or most of the profits arising out of the sale of the homes, i.e., the excess of receipts from sales over construction costs, would then be turned over to the partnership as the price for the original land, and the sum so realized, it was hoped, would be taxable

only as capital gains. Plaintiff had a 50% interest in the partnership, the wives 25% each. The amount of profits or "capital gains" would be divided in like proportion.

No price was placed upon the land on its acquisition by the corporations from the partnership, as it was not the intent or purpose of the parties to effect a normal sale at an agreed price, but rather it was their intent and purpose to realize a profit on the sale of the land with improvements to purchasers of homes in the development, and to let that profit be determined, as it would have to be determined, by the price that the corporations finally received on the sale of the homes. It was the theory of the accountant that by allocating to the land such realized profits, those profits could be considered as "capital gains" attributed to the sale of land by the partnership rather than as corporation profits attributable to the sale of homes. It was also the theory of the accountant, in furtherance of the attempt to classify the profits of the venture as "capital gains" from the sale of land rather than as income or profit from the operations of the corporations, to avoid identifying plaintiff with the corporations.

It took several years to complete the project and sell the homes. The venture, however, was quite successful.

The several corporate defendants "Budget", "Ranch" and "Manor" were formed, and through mesne conveyances they took title to different plots or acreage. Building loans were arranged and completed. Sales were made of improved plots, and also some vacant land. Plaintiff supplied sums in excess of $200,000 in cash for development purposes, which took the form of "loans" to Morgenstern. These loans bore no interest, and Morgenstern did not list them as obligations in financial statements which he furnished to certain banks. Thus, the form of plaintiff's separation from the investment in the building projects was ostensibly preserved. Some of the corporate and partnership books and records were likewise written up to carry out the appearance of separation in the purchase and sale of the land from the building program. However, when plaintiff insisted on written statements as to the status of the venture, "consolidated" balance sheets and other like statements of assets and liabilities were rendered to him, which clearly treated the whole project as one.

The disputed question between the parties is whether their agreement contemplated the allocation to the partnership and to the land of all the profits of the development, as plaintiff

contends, or whether, as defendants contend, the "bulk" of the profits were to be attributed to the land with a "satisfactory" profit allocated to the corporations. In plaintiff's view, the measurement of the profits allocable to the venture was fixed. In defendants' view, the allocation was left open for further determination without any standard of fixation, although defendants suggest that the determination was to be made in the discretion of defendant Morgenstern. They concede that no precise definition of what was to constitute the "bulk" of the entire profits or a "satisfactory" profit to the building companies was ever arrived at.

The trial court agreed with the views of defendants' witnesses on this subject. While recognizing that it could not permit the Referee to make a contract for the parties, it decided that the Referee, upon evidence adduced before him, could make a finding as to what the price should be for the land in accordance with some formula agreed to by the parties.

We disagree with the trial court's appraisal of the evidence as to the terms of the joint venture and its determination to leave the fixation of such terms to the Referee. There was no basis for the court or a Referee arriving at a formula except in accordance with the contention of one or the other of the parties. Which it was, the court was obliged to determine. There was no occasion for a reference on that issue. Nor was there any basis, as the trial court conceded, for the court making a contract for the parties or fixing, as the minority of this court would do, a "reasonable" price or profit to be accorded the partnership on some kind of equitable considerations. As the decision and reference in this particular cannot stand, we must determine, if we satisfactorily can, what the agreement of the parties was.

We hold that the evidence satisfactorily discloses that the parties did agree upon a formula. Simply stated, it was to accrue to the joint venture or partnership, ostensibly as the sales price for the land, the "profits" of the development enterprise, represented by the difference between the cost of construction, including reasonable salaries for the individual defendants as officers of the construction companies, and the sales price of the developed properties, including a sum representing the value of any unsold real property and any cash on hand.

It is not for us to determine the tax incidents of the arrangements, but it is not apparent to us how the tax incidents would

be affected or improved by allocating to the venture the "bulk" of the profits rather than the whole. We would assume that the nature of the transaction and of the parties' interests, rather than the division of their interests, would determine the tax consequences. We are not persuaded, even if we were inclined to aid their tax scheme, that acceptance of defendants' version would serve their purpose. Whatever the division was between them, it was a guise for treating the profits realized from a real estate development as a profit on the sale of land rather than as a corporate profit.

Both the substance and the form of the arrangement are clear. Indeed the parties are not in dispute as to either but only as to the percentage allotments. It is the documentary evidence which establishes the interests of the parties. Massapequa Associates was the name employed by the partnership for the conduct of its venture. Defendants prepared a consolidated balance sheet, a reconciliation of net worth, and a consolidated statement of income, profit and loss of Massapequa Associates, which included all the defendant corporations and their operations and show beyond cavil that the houses as well as the land, the assets of the corporations and their income and profit, were all those of the single venture, and that the investment in the whole was 50% by the plaintiff and 25% each by the male defendants.

The record made by the parties is so clear that we can with conviction find the actual agreement of the parties, which was, regardless of mechanics for tax purposes, to engage in a real estate development and divide the profits between them 50% to plaintiff and 25% to each of the male defendants. Whether the accounting is direct between the parties or through the form and channel of Massapequa is a detail which the Referee can determine as a matter of convenience.

Fixation of the reasonable value of the land by the Referee as of the time of the transfer would mean that market value would enter into the calculation, a contingency foreign to the agreement of the parties, as contended for by both sides.

The Statute of Frauds appears to present no difficulty. The contract was performed, and the legal and equitable rules of partnership responsibility would apply.

The judgment appealed from should be modified as indicated herein, and, as so modified, affirmed, with costs. Findings of fact to the contrary are reversed, and new findings, if desired, may be settled on notice.

RABIN, J. (dissenting). I cannot agree that the parties contemplated giving plaintiff a 50% interest in all of the profits of the enterprise. It is clear that plaintiff was interested in the project only if he could set up a capital gain. He could not have agreed to fix his interest at a percentage of all the profits for he was advised that were he to do that it would defeat his objective and, consequently, any such agreement would have been contrary to that advice which he received and followed. His return was to come solely from the sale of the land to the building corporations.

Of course, he wanted the purchase price to reflect as much of the realized total profits as was possible, but not so much as would destroy a claim to a capital gain. It was for that reason that at the time of the making of the arrangements between the parties the price for the sale of the land was not definitely fixed. It remained open to be fixed in the future. Plaintiff admitted as much in his testimony. In the light of the expressed purpose of the parties, it is understandable that it should have been so, and it makes acceptable the testimony of defendant Morgenstern that the " bulk " of the profits of the construction companies rather than all of the profits was to be paid over in consideration for the purchase of the land. It likewise makes acceptable the testimony of the accountant " that the price that was paid for the land should still leave a satisfactory profit in the building corporations." Such arrangement also explains the necessity of the consolidated balance sheet, for without one the parties could not determine the total profit out of which they were to subsequently fix the purchase price.

Plaintiff's claim that the purchase price was to be measured by all of the profits of the enterprise is not supported by his testimony or by his expressed purpose. He wanted more than the reasonable value of the land, and all of the parties were willing to let him have more than such value, but at the time of the agreement the parties were not yet in a position to fix the price. The land was, therefore, transferred without such an agreement having been reached.

Plaintiff tries to support the theory that he was a joint venturer entitling him, as a price for the property, to a share of all of the profits of the entire venture, by pointing to the large sums of money which he said he advanced to the project by way of investment. His suit against defendant Morgenstern to recover those sums advanced upon the claim that they were loans to Morgenstern, negatives his assertion of investment.

The carrying of the advances on the books as loans, rather than as investments, may be said to be in furtherance of the scheme of the parties to effectuate their tax purposes, but suing for the recovery of those sums and pleading them as loans is an entirely different matter. It is plaintiff's public declaration that the moneys advanced by him were loans and not investments. Plaintiff may not come to one court, plead a loan, recover payment thereof through the sanction of the process served, and then come to another court and urge that the same moneys were advanced as an investment in a joint venture and seek to reap the profits thereof. Plaintiff's very acts and statements indicate that he was to be interested in the purchase and sale of the land solely, and the price to be paid for it was to be something short of the full construction and development profits. For him to have made any other arrangement would have defeated his very purpose. The finding of the trial court that the "joint venture now claimed by the Plaintiff" (pursuant to which he now claims 50% of all of the profits) "was not made" is amply supported by the evidence, and it has strong support in plaintiff's own testimony. That finding, we should not disturb.

Here, then, we have an arrangement contemplating the sale of land with no price fixed and no agreement made with respect to such price as was sufficiently definite to make it enforcible. A contract with a consideration that is vague and indefinite may not be enforced by the courts. Nor may the courts write a new contract for the parties under such circumstances. However, in this case title to the lands has already been transferred and the parties not having agreed upon the price to be paid, the seller may only recover the reasonable value of that land at the time of the transfer of title.

Accordingly, the judgment should be modified to the extent of directing the Referee to hear and report on the reasonable value of the properties transferred to defendant corporations as of the time of such transfers and hear and report on the value of all of the assets of the Massapequa Associates and, further, the judgment should provide that defendant corporations pay to the partnership known as the Massapequa Associates such sum as will represent the reasonable value of the properties transferred from the Massapequa Associates to defendant corporations as of the time of such transfer and that the partnership known as the Massapequa Associates be dissolved and that it be decreed that plaintiff is entitled to a 50% interest in all of the assets of the Massapequa Associates, including the pay-

ment for the land to be made by defendant corporations, and that final judgment be held in abeyance until the confirmation of the Referee's report.

PECK, P. J., and BASTOW, J., concur with CALLAHAN, J.; RABIN, J., dissents in opinion in which COHN, J., concurs.

Judgment modified in accordance with the opinion herein and, as so modified, affirmed, with costs. Findings of fact to the contrary are reversed and new findings, if desired, may be settled on notice. Settle order on notice.